T.C. Memo. 1996-428


UNITED STATES TAX COURT


ROGER G. COTNER AND MARLAN W. COTNER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19739-94.                    Filed September 23, 1996.


<u>Roger G. Cotner</u>, pro se and for petitioner Marlan W. Cotner.

<u>James F. Mauro</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]

_____

[1]All section references are to the Internal Revenue Code in
effect for the year in issue.  All Rule references are to the Tax
Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioners' 1990 Federal income tax in the amount of $900, and an accuracy-related penalty pursuant to section 6662(a) in the amount of $180. With the exception of the section 6662(a) accuracy-related penalty, all of the issues resulting from adjustments made in the notice of deficiency have been conceded by petitioners.[2] In their petition, petitioners claim they are entitled to a capital loss deduction not included on their original 1990 Federal income tax return. Consequently, the issues for decision are: (1) Whether petitioners are entitled to a deduction for a long-term capital loss sustained in connection with the sale of a horse; and (2) whether the underpayment of petitioners' 1990 Federal income tax was due to negligence so as to render them liable for the accuracy-related penalty under section 6662 for that year.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. During the year in issue, petitioners were husband and wife and filed a joint Federal income tax return. At the time the petition was filed,

---

[2]In addition to the issues framed by the pleadings, respondent agrees that petitioners understated by $1,013, a depreciation deduction claimed on their 1990 Federal income tax return. Although no issue involving an additional depreciation deduction is formally before the Court, the parties, in response to a suggestion by the Court, have agreed that the allowance of this additional depreciation deduction will be reflected in their Rule 155 computations.

petitioners resided in Grand Haven, Michigan. Roger G. Cotner is, and was during the year in issue, a practicing attorney. He has been a member of the bar of this Court since 1982. References to petitioner are to Marlan W. Cotner.

Petitioners filed a joint Federal income tax return for the year 1990 on or about October 18, 1991. After completion of respondent's audit and during the preparation of the notice of deficiency, which was issued on August 18, 1994, petitioners submitted to respondent a Form 1040X, Amended U.S. Individual Income Tax Return, dated July 12, 1994. The Form 1040X contained an amended Schedule D claiming a long-term capital loss. Roger G. Cotner prepared petitioners' original return as well as the Form 1040X. Petitioners now concede the adjustments made in the notice of deficiency. In their petition, however, petitioners raise the issue of whether they are entitled to the capital loss deduction claimed on their amended return.

During the year in issue petitioner worked as a self-employed artist and as indicated, Roger G. Cotner was employed as an attorney. Petitioner has apparently had a lifelong interest in horses and horseback riding. She began riding horses in the third grade. She purchased her first horse while she was attending college as an art major. Her particular interest is in dressage riding, a form of riding in which the horse is required to execute a variety of precision movements upon command from its

rider.  Dressage riders are rated at different levels from training through grand prix.

Petitioner had taken horseback riding lessons once or twice per week for a period of 10 years prior to the year in issue. Some of her lessons were taken from a former Olympic rider.  As of the date of trial, she had progressed to the second level of dressage riding.  There is nothing in the record that suggests that petitioner's riding, dressage or otherwise, was done on other than a personal, recreational basis.

At various times during her life, petitioner owned a total of 5 horses.  During 1990, petitioner owned only one horse, which was named Sassy.  Sassy was purchased in 1986 at the age of 4 for $10,000.  Petitioner acquired Sassy because of her belief that the horse would perform well in dressage riding.  Petitioner did not acquire Sassy with the intent to breed her.  It would appear that petitioner acquired the horse solely for riding purposes. However, shortly after she purchased Sassy, petitioner decided to breed her.  After considering several potential stallions, sometime in the spring of 1987, petitioner decided upon a stallion named Reckless Blade.  Petitioner entered into a standard breeding contract with the owners of Reckless Blade and paid a stud fee of $850.  In the spring of 1988, as a result of the breeding, Sassy produced a live foal, which was given the barn name of Daisy.  The parties stipulated that petitioners incurred actual expenses related to the breeding of Sassy and the

maintenance of Daisy in the amount of $7,714.07. Included in
this amount are the following expenditures:

| Expenditures | Explanation |
|---|---|
| $4,583.00 | - stud fee; boarding and care for Daisy; and boarding & care of Sassy during pregnancy. |
| 3,131.07 | - costs to maintain horses, plus a moving expense. |

In February of 1990, petitioners sold Daisy for $1,400.
Daisy was sold at the approximate age of 22 months. A dressage
horse reaches its peak value between age 12 and 14, and only
after extensive training. Petitioners did not provide any
training to Daisy between her birth in 1988 and sale in 1990,
nor did they enter Daisy in any dressage competitions prior to
sale. Petitioner testified that personal, family matters
precluded her from spending the time with Daisy that would have
been necessary to train the horse for dressage riding.

### OPINION

Petitioners claim that they incurred a loss on the sale of
Daisy and that, pursuant to section 165(c)(2), they are entitled
to deduct the loss as a long-term capital loss. In calculating
the amount of the long-term capital loss petitioners computed
their cost basis in Daisy by taking into account all of the
expenditures incurred in connection with Daisy's care.
Respondent offers a variety of reasons why petitioners are not
entitled to the deduction here in dispute.

As we have pointed out in numerous opinions, deductions are a matter of legislative grace. A taxpayer who claims entitlement to a deduction must identify the specific statute that allows for the deduction and prove that all of the requirements of that statute have been satisfied. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Generally, section 165(a) allows as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. Disregarding certain parts of section 165(c) that have no application to this case, section 165(c)(2) provides that in the case of an individual, the deduction is limited to losses incurred in any transaction entered into for profit. In this case, we consider the relevant "transaction" to be the production of the foal, Daisy.

To be entitled to a loss under section 165(c)(2), petitioner's primary motive for entering into the transaction must have been to make a profit. Fox v. Commissioner, 82 T.C. 1001, 1021 (1984). By "primary," we mean "of first importance" or "principally". See Malat v. Riddell, 383 U.S. 569, 572 (1966); Fox v. Commissioner, supra; Surloff v. Commissioner, 81 T.C. 210, 233 (1983). Although profit need not be the sole motive, if we find that petitioner's intent to make a profit was merely incidental, petitioners will not be entitled to the loss under section 165(c)(2).

Whether a transaction is entered into for profit is a question of fact. The burden of proof is on petitioners to show that petitioner entered into the transaction primarily for profit. Rule 142(a). Greater weight is accorded objective facts than is given to petitioner's self-serving statements characterizing her intent. Fox v. Commissioner, supra; Siegel v. Commissioner, 78 T.C. 659, 699 (1982); Engdahl v. Commissioner, 72 T.C. 659, 666 (1979).

Taking petitioner's testimony as presented, there is simply very little to suggest that the decision to produce and sell a foal was made primarily for profit purposes. Petitioner testified that she did not purchase Sassy with the intent to breed her. We must assume from that testimony that her investigation and beliefs with respect to Sassy's heritage were more in connection with Sassy's performance riding than with the horse's breeding potential. Petitioner's only testimony with respect to a profit intent came in the form of the following generalized responses to a series of questions put to her during direct examination:

    Q    Prior to actually breeding Sassy did you
         investigate how much you'd be able to sell
         a foal for?

    A    Well, the market at the time was quite strong
         when I bought Sassy. She was $10,000. She
         was four. So ...

    Q    She was age four?

    A    She was age four. A three- or four-year old you
         could command 8,000 to 10,000.

If petitioner's primary purpose in breeding Sassy was to produce a foal that could be sold for a profit, we would have expected that petitioners would have produced some evidence as to how she intended to implement her plan, with some references to projected expenses, anticipated training programs for the foal, and revenue estimates that were based upon more than what she paid for Sassy.  See, e.g., Hartford v. Commissioner, T.C. Memo. 1995-351.  As it turns out, it would appear that petitioner's decision to sell Daisy was not in accordance with a previously developed plan to do so, but rather resulted from the extra expenses petitioners were forced to incur in maintaining an additional horse.

Following Daisy's birth, petitioners, who each maintained a career unrelated to horse breeding, displayed little interest in developing the foal so that it could be sold at a profit. Petitioner testified that a horse with Daisy's bloodlines would reach a peak value between age 12 and 14, and only with extensive training.  However, petitioners did not provide any training to the foal between its birth in 1988 and its sale in 1990, nor did they enter Daisy in any dressage competitions prior to sale. Moreover, Daisy was sold at approximately 22 months old, well before she could possibly reach her peak value.

It is clear from the record that petitioner had a keen interest in horses in general, and dressage riding in particular. It is equally clear that petitioner's interest in horses and

dressage riding was on a personal, recreational basis.  We think it more likely than not that petitioner's decision to breed Sassy was for the primary purpose of perpetuating what she believed to be an excellent bloodline, and that any profit motive was merely incidental to her primary purpose.

In light of the foregoing, we find that petitioner's motivation behind producing the foal was primarily personal in nature and that any profit motive that existed was merely incidental.  The transaction in which Daisy was sold was nothing more than the sale of petitioner's personal, albeit capital,[3] asset.  The loss from the transaction is not within the categories of losses allowed by section 165, or any other provision of the Internal Revenue Code.  Accordingly, petitioners are not entitled to a long-term capital loss deduction for the year 1990 in connection with the sale of Daisy.

In view of the foregoing, we need not address respondent's other arguments related to this issue.

Accuracy-Related Penalty

Respondent determined that petitioners are liable for the accuracy-related penalty imposed by section 6662(a).  Section 6662(a) and (b)(1) imposes a penalty on any portion of an underpayment which is attributable to negligence or disregard of

[3]Respondent, in her brief, suggests that Daisy was not a capital asset in the hands of petitioner.  No authority for this proposition was stated and it would appear to us that, given the express language of sec. 1221, which provides the definition of a capital asset, Daisy clearly fits within that definition.

rules or regulations. The term "negligence" includes any failure to make a reasonable attempt to comply with the statute, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). The penalty does not apply to any portion of an underpayment for which there was reasonable cause and with respect to which the taxpayer acted in good faith. Sec. 6664(c). Respondent's imposition of the section 6662(a) penalty is presumptively correct, and petitioners bear the burden of proving that they are not liable for the accuracy-related penalty under section 6662(a). Rule 142(a); cf. Welch v. Helvering, 290 U.S. 111, 115 (1933); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972).

Petitioners have conceded all of the adjustments made in the notice of deficiency, which adjustments gave rise to respondent's imposition of the accuracy-related penalty. They have offered no evidence or explanation of the circumstances surrounding the filing of their 1990 Federal income tax return, other than it was prepared by Roger G. Cotner. Respondent argues that as an attorney, Roger G. Cotner should have known that certain of the deductions claimed on the 1990 Form 1040 were "blatantly wrong", evidenced by their concessions in this case. We note that as a practicing attorney, Roger G. Cotner is held to a higher standard of care than other taxpayers. Tippin v. Commissioner, 104 T.C. 518 (1995). Petitioners' failure to explain the circumstances surrounding the preparation and filing of their 1990 Federal

income tax return, particularly in view of Roger G. Cotner's background, leads us to conclude that respondent's imposition of the accuracy-related penalty is appropriate.  Accordingly, petitioners are liable for the accuracy-related penalty under section 6662(a) for the year 1990.

To reflect the foregoing,

Decision will be entered
under Rule 155.